UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


John A. Rogers,                                                    Case No. 3:13 cv 798

        Plaintiff

   v.                                                                      MEMORANDUM OPINION

Norfolk Southern Railway Company,

        Defendant


      This matter is before me on Plaintiff's motion for partial summary judgment (Doc. No. 20), Defendant's opposition (Doc. No. 22), and Plaintiff's reply (Doc. No. 24). Also before me is Defendant's motion for summary judgment (Doc. No. 21), Plaintiff's response (Doc. No. 23), and Defendant's reply (Doc. No. 25). This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

      For the reasons that follow, the motions for summary judgment are denied.

### I. BACKGROUND

      John Rogers was working in his capacity as a conductor for Norfolk Southern Railway Company in the fall of 2012. On October 10, 2012, Rogers was taking a freight train from the Bellevue, Ohio yard to Portsmouth, Ohio. Prior to the train's departure, Rogers was required to release the hand brakes on six railroad cars positioned closest to the three engines. After releasing the cars, Rogers and his crew would ride to Portsmouth.

      Rogers released the hand brakes on the first two cars without incident. His attempt to release the brake on the third car, NW 517038, was unsuccessful as the brake wheel would not

move. According to Rogers, he attempted to release the hand brake at least two or three times before advising the engineer of his difficulty and asking him to release the train air brakes in the hopes this procedure would loosen the hand brake on the car.

After the air brakes were released, Rogers again attempted to release the hand brake, all to no avail. Rogers then called the Mechanical Department and Chris Martin was dispatched to the scene for assistance with the hand brake. Initially, Martin attempted to release the hand brake using the same procedure as Rogers but with no success. Rogers then attempted to assist Martin in releasing the hand brake and Rogers testified that Martin asked him to "give him a hand" in that effort. Martin disputes that he asked Rogers for any assistance. Rogers and Martin were unsuccessful in their joint efforts to release the hand brake.

Martin then obtained a pipe wrench from his truck and both he and Rogers attempted to release the hand brake using the pipe wrench. After multiple attempts, the hand brake was finally released.

Rogers requested the rail car be removed from service due to the condition of the hand brake. He also reported an injury to his back during these attempts to release the hand brake. After his injury was reported to a supervisor, Rogers was taken off the train before it departed for Portsmouth.

On April 10, 2013, Rogers filed this action against Norfolk Southern Railway Company alleging violations of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq., for failing to provide a reasonably safe work place. His second cause of action charges violations under the Federal Safety Appliance Act ("FSAA"), 49 U.S.C. § 20301 et seq., and the applicable hand brake provisions contained in the Safety Appliance Standards in the Code of Federal Regulations ("CFR"), 49 C.F.R. Pts. 213 and 215.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is

not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249). Therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

### III. Discussion

**A. Count 1-Violation under the Federal Safety Appliance Act**

    1. The Federal Safety Appliance Act

The FSAA "imposes an absolute duty on railroads to provide and maintain certain safety appliances." *Richards v. Consol. Rail Corp.*, 330 F.3d 428, 432 (6th Cir. 2003) (citing *Myers v. Reading Co.*, 331 U.S. 477, 485 (1947)).

In order to recover for a violation of the FSAA, a plaintiff "need only show (1) the statute was violated; and (2) [he] suffered injuries 'resulting in whole or in part' from the defective equipment." *Richards*, 330 F.3d at 432. An FSAA violation "is sufficient to establish employer negligence under FELA and . . . 'eliminates contributory negligence as a consideration.'" *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 351 (6th Cir. 2002) (quoting *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 507 n. 13 (1957)); *see also*, 45 U.S.C.A. § 53 (employee's contributory negligence is immaterial where railroad violated "any statute enacted for the safety of employees" and that violation contributed to employee's injury). Thus, the "FSAA is a strict liability statute." *Kavorkian v. CSX*, 117 F.3d 953, 957 (6th Cir. 1997) citing *Norfolk & Western Ry. Co. v. Hiles*, 516 U.S. 400 (1996).

4

2. Applicability of the FSSA

As an initial matter, Defendant raises the applicability of the FSSA challenging the status of the rail car as not being "in use."

Under 49 U.S.C.§ 20302:

> **(a) General**. --Except as provided for in subsection ( c) of this section and section 20303 of this title, a railroad carrier may use or allow to be used on any of its railroad lines—
>
> **(1)** a vehicle only if it is equipped with - -
>
> > **(B)** secure sill steps and efficient hand brakes; . . .

The statute requires the train or railcar be "in use" for the FSAA provisions to apply. 49 U.S.C. § 20302; *Rogers v. Norfolk Southern Ry. Co.*, 126 Fed. Appx. 694, 696 (6th Cir. 2005), citing *Brady v. Terminal R.R. Ass'n*, 303 U.S. 20, 13 (1938). The determination of when a train or railcar is "in use" under the FSAA is a question of law for the court. *McGrath v. Consolidated Rail Corp.*, 136 F.3d 838, 842 (1st Cir. 1998); *McCool v. Norfolk Southern Ry. Corp.*, 950 F.Supp.2d 939, 943 (N.D. Ohio 2013).

As both sides here acknowledge, the Sixth Circuit has not yet spoken on a methodology to make this determination.

The two tests currently utilized are those enunciated by the Fifth and Fourth Circuits. In *Trinidad v. Southern Pac. Transp. Co.*, 949 F.2d 187, 189 (5th Cir. 1991), the Fifth Circuit utilized a bright-line test when it held a train had not been released for departure following inspection, was not considered "in use" under the FSAA .

The Fourth Circuit in *Dean v. CSX Transportation, Inc.*, 152 F.3d 326, 329 (4th Cir. 1998), implemented a totality of the circumstances approach and considered primary factors to be "where the train was located at the time of the accident, and the activity of the injured party." *See also, Phillips v. CSX Transportation, Inc.*, 190 F.3d 285 (1999).

Sister courts in both the Northern and Southern District of Ohio have applied a totality of the circumstances approach but clarified the case law applicable to a train versus that of a railcar as it relates to a FSSA claim. For example, in *Hinkle v. Norfolk Southern Ry. Co.*, 2006 WL 3783521 (S.D. Ohio 2006), Judge Frost took note of a district court decision from the Northern District of Indiana, *Underhill v. CSX Transp., Inc.*, 2006 WL 1128619 (N.D. Ind. 2006), which clarified the case law as it applied to railcars versus trains. Stripped to its essence, the court in *Underhill* noted, "The problem is that both *Deans* and *Phillips* considered factors that are only relevant to determining when a *train* is in use, and have little application when determining whether a *rail* vehicle is in use." *Id.* at *5. (Emphasis added).

More recently, Judge Gwinn in *Nobles v. Norfolk Southern Ry. Co.*, 2015 WL 2250669 (N.D. Ohio May 15, 2015), found the distinction between a train and vehicle to be significant noting the history of treatment as it pertained to the "in use" status as follows:

> Courts have acknowledged and analyzed the differences in what must be "in use" for over a century. In 1915, in *United States v. Erie Railroad Co.*, the Supreme Court said that the difference meant that the power and train brake requirements now found in 49 U.S.C. § 20302(a)(5) did not apply during switching maneuvers because they only apply to "trains," but that the other requirements applied even during switching maneuvers because they apply to "car [s] (not "vehicle[s]"). Although this characterization was dicta in *Erie Railroad*, the Supreme Court has subsequently applied the coupler provision of the FSAA without discussion of the "in use" requirement in cases where the injury occurred during a switching maneuver.

*Id.* at *2. (Footnotes omitted).

Based upon a close inspection of the case law relied upon by the *Dean* and *Phillips* panels, the aforementioned trial courts all rejected the Fourth Circuit's determination on the "in use" status for a railcar engaged in a switching operation. *Nobles*, 2015 WL 2250669 at * 2-3; *Hinkle* 2006 WL 3783521 at *4-6; *Underhill*, 2006 WL 1128619 at *5-7.

6

In this case, the Defendant contends the railcar was not in use because it had not been moved to an outbound track and the pre-departure inspections had not been completed.

On the day of the incident, Plaintiff was the conductor and assigned to take a train back to Portsmouth. (Rogers Dep. p. 81-81). Plaintiff and his crew were shuttled out to the train location. Neither Plaintiff or his crew engaged in any switching operations to put the train together. (*Id.* at p. 83). Plaintiff was in charge of the six rail cars coupled to the engines and "would inspect those cars to make sure they were in order and also release the brakes, the hand brakes, and then go back to the engine." (*Id.* at p. 85). While the Plaintiff's duties included a visual check of the rail cars for "visible defects," his only duties relating to the hand brakes was to release them and report this to the crew so the engineer could release the airbrakes and travel could commence. (*Id.* at pp. 87-88).

Plaintiff was also asked about the track at the time of the incident:

> Q: What kind of track are you on when you're in B4 and doing this work?
>
> A: They're, they're, it's called a B4 extension and there's four tracks. One, two and three have a, typically have motors closer to the admin building, sometimes short trains. The B4 track is a track that goes all the way to Bragg Road, there's some power switches there in which they can decide how they're going to route you out, depending on where the train is going, either toward Indiana or Portsmouth or Columbus, or. And it's a, it's a track manned by a power switch so, you know, typically, unless there was a malfunction in the power switch, we wouldn't have to throw any switches to depart, the ranger tower will take care of that.
>
> Q: And then B4 extension track goes where next?
>
> A: It follows all the way out, goes out to a lead—
>
> Q: Okay.
>
> A: --track and then.
>
> Q: So you were not on the lead yet?
>
> A: No. They call it B4 extension.

(*Id.* at p. 89).

Keeping in mind the Supreme Court's admonition to liberally construe the SSA (precursor to the FSAA) as a safety measure, *United States v. Seaboard Air Line R. Co.*, 361 U.S. 78, 83 (1959), I

7

also find the totality of the circumstances approach adopted by our sister courts is the appropriate test versus the bright line test advocated in *Trinidad*.

In considering the location factor, the railcar was on an extension track leading to the main line and awaiting departure. There is no evidence to establish it was awaiting repairs or on a storage track. Similar to the situation in *Williams v. Norfolk Southern Ry. Co.*, 126 F.Supp.2d 986, 991 (W.D. Va. 2000), Plaintiff was part of a transportation crew. Therefore, the circumstances in this case weigh in favor that the railcar was "in use" regarding the location factor.

As to the activity factor, the Plaintiff's duties regarding the hand brakes were to release them so the next step in getting the train underway to the stated destination could begin. The transportation crew to which Plaintiff was assigned was tasked with getting the train ready for imminent departure. As their task was not maintenance or service of the train, this also weighs in favor of a finding that the railcar was "in use" and weighs in favor of Plaintiff as to the activity factor.

The Defendant also advocates consideration of other factors such as: (1) the hand brake had not yet been released; (2) Chris Martin, the carman had not yet completed his inspection; and (3) the train and railcar were under a three-step protection meaning no movement was possible.

While the lack of movement and pre-release status of the hand brake appear to go to Defendant's argument on efficiency, it is of little moment to the present "in use" analysis. The inspection by Chris Martin, after a call from the Plaintiff, does not remove the railcar from "in use" status simply because he needed assistance to release the hand brake, nor has the Defendant presented a case which supports that proposition. And, it was Plaintiff's duty to release the hand brake *before* departure. Therefore, consideration of these factors has little or no impact upon my conclusion the railcar was "in use" at the time of the incident.

As I find the railcar was "in use," the FSSA is applicable, Defendant's motion for summary judgment is denied as to this branch of its motion.

3. <u>Status of Hand Brake</u>

The Plaintiff moves for summary judgment on Count 1 contending there is no issue of fact regarding the defective hand brake. In contrast, the Defendant contends the Plaintiff is not entitled to summary judgment on this claim because there is no evidence to support a particular hand brake defect.

The Supreme Court in *Myers v. Reading Co.*, 331 U.S. 477 (1947), the Court addressed the issue of efficiency regarding hand brakes on rail cars:

> 'There are two recognized methods of showing the inefficiency of hand brakes equipment. Evidence may be adduced to establish some particular defect, or the same efficiency may be established by showing a failure to function, when operated with due care, in the normal, natural and usual manner.' *Didinger v. Pennsylvania R. Co.*, 6 Cir., 39 F.2d 798, 799.
> 
> . . . .
> 
> The test in fact is the performance of the appliance. *Philadelphia & R.R. Co. v. Auchenbach*, 3 Cir., 16 F.2d 550. Efficient means adequate in performance; producing properly a desired effect. Inefficient means not producing or not capable of producing the desired effect; incapable; incompetent; inadequate.

*Id.* at 483.

On the day of the incident, there is no dispute that Plaintiff and Chris Martin both were unsuccessful in releasing the hand brake. The Plaintiff also testified he "had [hand] brakes not release before." (Rogers Dep., p. 94). The failure of the hand brake to release when operated in the normal, natural, and usual manner remains a question for the trier of fact. *See e.g. Ditton v. BNSF Railway Co.*, 2013 WL 2241766 *13-14 (C.D. Ca. 2013) (conflicting testimony on the issue of defect and evidence that the hand brake commonly became stuck raised a question for a jury). Moreover, I reject the Defendant's argument that the only definition pertaining to an "efficient" hand brake is one which holds the railcar in place. *See Williams*, 126 F.Supp.2d at 993 ("Stuck handbrakes qualify as 'inefficient' under the FSSA.") (citation omitted).

9

The Defendant also contends partial summary judgment should be denied to Plaintiff as there is a genuine issue of material fact regarding Plaintiff's use of an unsafe method to disengage the hand brake.  I agree there is a dispute over whether the proper procedure was utilized by the Plaintiff and its impact upon causation under the FSAA.  *See Richards*, 330 F.3d at 437.

While the parties offer expert opinions on the efficiency of the hand brake, based upon the testimony of Plaintiff and other railroad employees, this question is one for the trier of fact and consideration of those opinions is reserved for trial.

Accordingly, Plaintiff is not entitled to summary judgment on the issue of a defective hand brake nor is the Defendant entitled to summary judgment on this branch of its motion.

### B. Count II-Violation under the Federal Employers' Liability Act

The Defendant also moves for summary judgment on the FELA claim.  The Defendant's position is premised upon the lack of a viable claim under the FSSA.  As I have determined there are questions of fact regarding the efficiency of the hand brake and causation, dismissing the FELA claim at this juncture is premature.   Accordingly, I deny the Defendant's motion for summary judgment on the FELA claim.

### IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for partial summary judgment (Doc. No. 20) and Defendant's motion for summary judgment (Doc .No. 21) are both denied.

So Ordered.

s/ Jeffrey J. Helmick<br>United States District Judge